**SAUNOA S. VAOULI, Appellant,**

v.

**SUAFA`I P. SATELE, Appellee.**

High Court of American Samoa
Appellate Division

AP No. 09-97
(MT No. 08-90)

April 14, 1999

Before RICHMOND, Associate Justice, WARD*, Acting Associate Justice, TUA`OLO, Chief Associate Judge, and SAGAPOLUTELE, Associate Judge.

Counsel: For Appellant, Gata E. Gurr
For Appellee, Asaua Fuimaono

OPINION

Because of illness, death, and perhaps, sheer fatigue, the field of candidates presently before this court is much smaller than that in 1994 when we last reviewed this controversy over the selection of a successor to the Faumuina title. After being remanded for retrial by the land and titles division in 1994, the matter proceeded to trial during January 22-24, 1997, with three candidates remaining: Fautua L.T. Faumuina ("Fautua"), since deceased, appellant Saunoa S. Vaouli ("Saunoa"), and appellee Suafa`i P. Satele ("Suafa`i"). The trial court, in a lengthy decision, awarded the title to Suafa`i. For reasons detailed below, we affirm that decision.

**Discussion**

A. Motion to Dismiss Candidate Fautua

■ Appellant Saunoa contends that because Fautua failed to join in the appeal of the trial court's 1992 decision, he should have been dismissed from the retrial of this controversy upon remand by this court. We agree with the trial court's decision that allowed Fautua to participate in the retrial. The Legislature has specifically exempted proceedings before the land and titles division of the High Court from the rules of civil procedure and specifically authorized that division to act in each case in such a manner as it considers to be most consistent with natural justice and convenience. A.S.C.A. 8 3.0242.

■ In a matai title case all candidates must first comply with the statutory requirements outlined under A.S.C.A. §§ 1.0401-.0414, which include the filing of a petition signed by at least 25 blood members of the title claimed. In the absence of any clear legislative intent to preclude otherwise qualified candidates from participating in the retrial of a matai title controversy, we find no compelling reason to impose a rule precluding such participation. Even were we to consider applying this rule of civil procedure to a land and titles case, the instant controversy does not present a case in which any part of the trial court's decision remained valid and binding upon those parties not joining in the appeal.

---

* The Honorable John L. Ward II, District Court Judge, serving by designation of the Secretary of the Interior.

7

This court's opinion in *Saunoa v. Lutali,* 26 A.S.R.2d 1 (App. Div. 1994) effectively voided the entire opinion and order of the trial court and remanded the controversy to that court for a new trial.

For the above reasons we find Saunoa's reliance upon *Security Pacific National Bank v. Conquest,* 4 A.S.R. 2d 59, 64 (Trial Div. 1987) to be misplaced. We find no error in the trial court's decision to allow Fautua to participate in the retrial of this controversy.

B.  Motion to Disqualify Trial Judges at Retrial

Saunoa challenges the impartiality of the associate judges who sat at both the first trial and at the retrial and urges this court to remand this controversy for yet another trial before a brand new panel of associate judges. Contrary to Saunoa's contention that "partiality is one of the very reasons why the appellate court remanded this case for a new trial", this court's decision in *Saunoa* centered on the appearance of impartiality in a situation where a governor who had appointed the associate judges appeared in court before such judges in his individual capacity.

We further noted that no specific accusations of impartial conduct were made against those judges and that their conduct was honorable. The problem, however, was that those judges had been appointed by Governor Lutali and the Governor was ultimately selected as the new titleholder at the conclusion of the first trial. The appearance of impartiality in such circumstances was simply too great to be allowed to stand. Prior to the second trial, however, Governor Lutali withdrew his petition which effectively resolved the appearance of impartiality which his presence had engendered.

■ Saunoa has provided no legal basis for his assertion that a judge who presided at the trial of a case which was reversed and remanded on appeal is automatically disqualified to retry the case. Indeed, absent special circumstances, the general rule is to the contrary. 46 AM. JUR. 2D § 178, *Judges—Retrial of case reversed by higher court* (2d ed. 1994)

The trial court, in rejecting Saunoa's motion for a new trial, stated that it had denied Saunoa's motion to reconstitute a new panel of associate judges to retry the case, *inter alia,* due to the Rule of Necessity and because appellant failed to timely object to the judges on the panel. Notwithstanding the court's order of September 9, 1994 that all parties submit within 60 days any written objections to any judges that might be assigned to rehear this controversy, the record indicates that Governor Lutali did not withdraw his candidacy until just prior to the second trial which occurred in January 1997. Lutali's withdrawal from the controversy effectively removed the disqualification of any associate judges who had been appointed by him while governor, as required by

8

this court's opinion in *Saunoa*.

■ We need not decide whether Saunoa had effectively waived his right to address this late development in this case, because we agree with the trial court's denial of his motion to reconstitute the panel of associate judges with judges that had not heard the first trial. As discussed above, this Territory has no statutory or constitutional prohibitions against the same judges retrying cases and controversies upon remand from the appellate division. Nor does the statutory scheme enacted by the Legislature indicate any other legal option for resolving a matai title controversy.

■ Article III of the Revised Constitution of American Samoa (R.C.A.S.) vests the judicial power in the High Court, District Court and other courts established by law as an independent branch of government, with the Chief Justice and Associate Justices appointed by the U.S. Secretary of the Interior. The Legislature implemented this constitutional language under A.S.C.A. §§ 83.0101-.0103 providing for the administration of the independent judicial branch by the Chief Justice, and specifying generally the jurisdiction of the courts. Under A.S.C.A. § 3.0208(b), the land and titles division has exclusive jurisdiction over all matters relating to matai titles and land. In matai cases, the controversy is heard by one justice and four associate judges. A.S.C.A. § 3.0240. Appeals from the land and titles division, unlike other appeals, afford the associate judges equal voice in such appellate decisions. A.S.C.A. § 3.0221. Associate judges are appointed by the Governor upon recommendation of the Chief Justice and confirmed by the Senate, with the panel of available, sitting judges to be no less than five members. A.S.C.A. § 3.1004. Upon reaching retirement age of 65, associate judges normally are added to the panel of temporary associate judges until mandatory separation from the court at age 70. A.S.C.A. § 3.1006.

■ In the event of inadequate numbers of associate judges to sit at trial or on appeal, the Chief Justice may appoint temporary associate judges from a panel of persons recommended by the Chief Justice, found qualified by the Governor, and confirmed by the Senate. A.S.C.A. § 3.1006. No judge or justice may sit on the appellate division and determine an appeal from a decision in which that judge or justice made or joined in at the trial court. A.S.C.A. § 3.1007.

As stated by the presiding justice at the second hearing in January 1997, the only associate judges available to rehear this controversy were assigned to do so. No additional judges remained from the panel of temporary judges and the other active associate judges were either off-island or self-recused.

Saunoa contends that another, entirely new panel could have been appointed and suggests that the U.S. Secretary of the Interior could have fulfilled that duty. We find no legal basis to support this assertion. The Legislature has carefully constructed a statutory scheme for associate judges to decide matai title controversies, and for the exclusive means of such judges' recommendation, appointment, and confirmation. The Revised Constitution of American Samoa authorizes the Secretary of the Interior to appoint the Chief Justice and such Associate Justices as necessary. R.C.A.S. Art. III Sec. 3. Congress has prohibited any amendments to or modifications of the R.C.A.S. except by Act of Congress. 48 U.S.C. 1662(a) (1983). Although the legal ramifications of 48 U.S.C. 1662(a) have not been fully developed in caselaw, it appears clear that the Secretary of the Interior's present judicial appointment powers extend only to the Chief Justice and Associate Justice(s). To judicially extend that power of appointment to include associate judges, whose role in matai title controversies is to hear and decide matters pertaining to the Samoan culture, presumably enacted under the policy-protective legislation section of the R.C.A.S. (Article I, Section 3), would appear neither prudent nor legally possible without the prior consent of Congress. We therefore concur with the trial court's decision to deny Saunoa's motion to appoint a new panel of judges to retry this case.

## C. Recusal of Associate Judges under A.S.C.A. § 3.1007

Saunoa also argues that two of the associate judges assigned to the retrial in this matter should have recused themselves, because either through marriage or family history, such judges were distantly related to Suafa'i. We have reviewed the affidavits filed to verify these allegations and examined the language of A.S.C.A. § 3.1007, which states in pertinent part that "[n]o judge shall sit in any case in which he, or family of which he is a member, has a substantial interest or in which he . . . is a member of the same family with any party to the case."

Even assuming the hearsay statements contained in the submitted affidavits are accurate, we do not find that these alleged family relationships would trigger either judge's recusal under the statute. The alleged family ties are simply too tenuous to override either judge's duty "not to recuse himself . . . unless there is a need to do so." *Pens v. A.S.P.A.,* 10 A.S.R.2d 23 (Trial Div. 1989); *Uiagalele v. Ulufale,* 17 A.S.R. 2d 158 (App. Div. 1990). Although we stressed the importance of avoiding the appearance of partiality in our opinion in *Saunoa,* we noted at page 5 of that opinion that the test for this standard is "whether a disinterested observer would entertain significant doubt that justice would be done" (emphasis added).

We find no significant doubt as to the impartiality of the individual judges hearing this matter being affected by family or social ties. Saunoa's Position far exceeds the judicial standards embraced in the statutes and Canons of Judicial Ethics. In one instance, Saunoa alleges that one judge, though his half-sister, is related to an extended family to which Suafa`i belongs. In the second instance, Saunoa alleges that another judge's wife may be a first cousin by marriage to Suafa`i's step-father. Absent additional circumstances tending to indicate that either judge's family members had a personal or financial interest in the outcome of this case, these alleged relationships are too distant to support even an inference of the appearance of impartiality.

■ We also reject Saunoa's argument that because the trial court invoked the Rule of Necessity in denying the motion for new trial, that the trial court was somehow acknowledging that some degree of partiality was present in the panel of associate judges. As discussed in *United States v. Will,* 449 U.S. 200, 213-216 (1980), this ancient rule of common law requires the adjudication of a controversy by a judge who is, by statute, canon, or other direct interest, disqualified from hearing that matter when no provision is made for calling in another judge or no other judge can take the disqualified judge's place. The basis for the rule is that unless a judge, even an interested one, can address and resolve the case, the litigants may be deprived of their constitutional right to seek judicial resolution of their controversy.

The trial court did not invoke this common law rule to justify the associate judges' hearing the retrial of this controversy even though they were disqualified. Rather, the trial court held that even if there was an appearance of partiality, there were no other available associate judges to hear the case. Order Denying Motion For Reconsideration at 3 (May 19, 1997)

Because we have determined that the associate judges who participated in the retrial were not, *ipso facto,* disqualified from sitting because of their participation in the first trial, and that the individual judges challenged by Saunoa were not otherwise subject to recusal because of allegations of tenuous or remote family ties to the litigants, we need not reach the issue of whether the Rule of Necessity applies to the facts of this case.

D. Trial Court's Findings of Fact

■ Our review of this issue is governed by statute, which prohibits this court from setting aside findings of fact by the land and titles division unless such findings are "clearly erroneous." A.S.C.A. § 43.0801(b). This court may determine that the trial court's findings are clearly erroneous when, "although there is evidence to support it, the reviewing

court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsom Co.,* 333 U.S 364 (1948).

In matai title controversies, the trial court's decision as to the best candidate is determined by its findings relative to the four categories of statutory criteria prescribed by statute. A.S.C.A. § 1.0409. Not only did the Legislature prescribe what the trial court was to determine, but also the priority of these considerations. Further, by prohibiting any justice of the High Court from participating in the ultimate decision of the four-member associate judge panel unless to break a tie, the Legislature has strongly indicated that in the absence of an uncontested family consensus as to who should succeed to a vacant matai title, the next best selectors of the successor are associate judges, who historically have been ranking titleholders within their own extended families. To insure that culturally experienced jurists also fairly participate at the appellate level, the Legislature has further provided that associate judges sitting in the appellate division on appeals from the land and titles division have equal decision-making power with the justices assigned to that case. A.S.C.A. § 3.0221.

The statutory dispute resolution scheme adopted by the Legislature for deciding matai title controversies is unique, both in the composition of the judicial panel and the criteria of title succession which such a panel must assess and determine. The carefully developed statutory plan indicates clear legislative intent to insulate such trials from the strict application of arguably inapposite judicial rules, practices, and procedures applicable to nearly all other civil controversies within the jurisdiction of the High Court.

Candidates are guaranteed by statute a panel of judges neutral in act and appearance and an assessment and determination of the statutorily established and prioritized criteria of consideration for selecting the successor to the vacant title. It is worth stressing, however, that this selection process is a statutory alternative to the preferred historical selection process in which the extended family meets and, by consensus, selects a successor based upon that family's particular traditions and practices.

In order to preserve the broad discretion afforded by statute to the associate judges to determine the best qualified successor to a matai title, this court must resist the imposition of broad invariable rules of preference for certain individual attributes of the candidates. For example, regardless of some matai title controversies having been resolved in favor of the candidate possessing the higher degree of formal education or the greatest disposable income or personal wealth, such cases cannot be interpreted, as Saunoa urges, to invariably require the

12

land and titles division to hold that such attributes always outweigh the accomplishments of other candidates. To establish such broad rules of law would at once frustrate the broad grant of discretion given by the Legislature to the trial court in matai title cases and unduly encroach upon the specific, constitutional powers of the Legislature to preserve and protect the Samoan way of life.

By way of example, Saunoa argues that Suafa`i's use of an unregistered matai title must necessarily be fatal to any positive evaluation on the criterion of his "forcefulness, character, personality and knowledge of Samoan customs" under A.S.C.A. § 1.0409(a)(3). Saunoa claims that Suafa`i used an unregistered matai title in violation of A.S.C.A. § 1.0414 and that this "crime" allowed Suafa`i to acquire his knowledge of Samoan customs.

A.S.C.A. § 1.0414, in pertinent part, reads as follows:

> A person who uses any matai title or permits the use of any matai title in his behalf before the same has been registered in accordance with the provisions of this chapter . . . shall be sentenced as for a class B misdemeanor.

This statute prohibits at least three types of conduct with respect to matai titles. It prohibits the actual or permitted use by individuals of matai titles that have not been duly registered and recorded in the matai title registry prior to January 1, 1969 with the territorial registrar. A.S.C.A. § 1.0401. Also prohibited is the actual or permitted use of any matai title appearing in the registry by an individual who has not fully complied with the statutes governing succession to a vacant, registered matai title, or the actual or permitted use of a registered matai title by an individual who is not the present legal titleholder.

The record contains sparse mention of Suafa`i's alleged criminal activity in the use of an unregistered matai title. *See* R.T. p. 182, lines 14-20. Suafa`i did not contest in his brief or during oral arguments that the talking chief title "Moasili" was conferred upon him by the previous Faumuina titleholder or that the title is not recorded in the matai title registry. Suafa`i contends, however, that it is a common practice for senior matais, and especially paramount chiefs, to create and confer new matai titles upon members of their families for the limited purpose of serving the higher-ranking matai of the family. Because of this practice, Suafa`i argues that the statutory prohibitions against the illegal use of a matai title should be narrowly construed to apply only to the actual or permitted use of a matai title which is listed in the matai title registry by a person when the title is vacant or legally held by another.

As discussed above, the Legislature clearly prohibited the actual or permitted use of unregistered matai titles when enacting the broad language of A.S.C.A. § 1.0414, to halt the proliferation of new matai titles because that practice would "tend to deminish (sic) the dignity and degrade the matai titles now existing." *Mailo v. Fuimaono*, 4 A.S.R. 757, 761-62 (Trial Div. 1967). Current practices to the contrary notwithstanding, the fact that a paramount chief breaks the law by bestowing an unregistered matai title within his family does not legally excuse the person using that prohibited title from the statute's application.

We are not presented with any particulars with respect to the creation or use of the unregistered matai title "Moasili." Both parties concede, however, that Suafa`i was never charged or convicted for using this title under A.S.C.A. § 1.0414. Indeed, Suafa`i, when asked if he knew that for 20 years he had violated the law responded, "Nobody has told me that." R.T., p 182, lines 18-20.

Saunoa contends that it was clearly erroneous for the trial court to rank Suafa`i ahead of the other candidates in terms of character and knowledge of Samoan customs because of Suafa`i's alleged illegal use of the unregistered matai title "Moasili." Saunoa cites several cases to buttress his assertion that title candidates who have used unregistered matai titles have invariably lost in matai title controversies. We have carefully reviewed those cases and find that although the losing candidates in each cited case had indeed used an unregistered or vacant title, the court found that the losing candidates had also been convicted of committing additional and separate crimes ranging from larceny *(Tooto`o v. Faea,* 2 A.S.R. 94 (Trial Div. 1940), *Fa`agau v. Tulei,* 4 A.S.R. 490 (Trial Div. 1964))* to adultery *(Tuinei v. Ieliko,* 2 A.S.R. 117 (Trial Div. 1964))*, and evidenced other personal shortcomings indicating character flaws. In the instant case, Saunoa had ample opportunity at trial to demonstrate his present contention that Suafa`i's prohibited conduct indicated a character flaw sufficiently significant to find him unfit to assume the contested matai title. Upon reviewing the evidence as a whole on this matter, however, we do not find the trial court's findings of fact on the issue of Suafa`i's character or knowledge of Samoan custom to be clearly erroneous.

▪ Although we agree with Saunoa that a prior criminal conviction of a crime, especially an infamous crime or one involving moral turpitude, would likely prove fatal to any candidate's favorable assessment as to character, prior statutes which automatically disqualified certain convicted felons from registering matai titles have been repealed and not reenacted. *See Akemo v. Mulu,* 2 A.S.R. 89 (Trial Div. 1940). We must construe this statutory history as reflecting the Legislature's intent to allow the panel of associate judges in matai title cases broad discretion to

weigh all attributes—both positive and negative—in evaluating each candidate's character. We do not find that the trial court exceeded the limits of that discretion in its evaluation of Suafa'i's character in this matter.

We have also reviewed Saunoa's allegations of error in the trial court's evaluation of clan support. The trial court found that Suafa'i's residence in the village, coupled with active *tautua* (service) in meeting the family's commitments, allowed him to prevail within this single-clan family. Despite Saunoa's spirited arguments to the contrary, we do not find these findings of fact to be clearly erroneous when reviewing the record as a whole.

## Conclusion

Based upon the foregoing, we find no error of law or fact in the trial court's decision requiring a new trial. The decision of the trial court is therefore affirmed.

It is so ordered.